CARL V. NIXON, *Admr. v.* LETHA M. SHAVER

(No. 7748)

Submitted October 9, 1934. Decided October 30, 1934.

*G. W. Ford* and *James C. Holt,* for plaintiff in error.
*W. P. Samples,* for defendant in error.

WOODS, PRESIDENT:

This action is based on an assignment by the National Bank of Fairmont to Carl V. Nixon, as administrator of the estate of Lucinda R. Nixon, deceased, of any rights

the former may have against the person or persons receiving money on a certain certificate of deposit issued by it on the 16th day of March, 1929, in the name of Lucinda R. Nixon. The assignee seeks a recovery against Letha M. Shaver of the value of the certificate, with interest, on the theory that she had forged or indorsed without authority the name of the payee and obtained the money thereon. From an adverse judgment, plaintiff brings error.

Plaintiff's decedent died November 12, 1930, at the age of eighty-eight years. It appears that she resided with her brother, J. J. Nixon, from the early nineties until 1917, when she went to Joshua R. Nixon's (another brother). She lived with the latter until his death, March 6, 1929. Both brothers had looked after their sister's financial affairs. The former stated that he had placed "her money, $500.00, in the bank, and kept it there"; and that she "didn't have no mind to do business." Carl V. Nixon testified that his father, Joshua R. Nixon, had looked after Lucinda's business for years; that witness had been with his father when the latter renewed certificates for Lucinda; that such certificates were taken from the same box, in the press, in which his father kept his own certificates; that his aunt "wasn't capable of attending to business"; "wasn't able to get to town". Lucinda lived with the defendant (a daughter of Joshua) from March 9th to June 30, 1929, and with Carl V. Nixon from June 30th to December 8, 1929. On March 16, 1929, a certificate, in the name of Lucinda, having become due and payable was presented to the National Bank of Fairmont by someone, and a new six months certificate issued in its place. On September 21, 1929, the last-mentioned certificate was paid by the bank. The name of "Lucinda R. Nixon" indorsed on both certificates is in the same handwriting. The evidence of plaintiff is that Lucinda could not write her name—of defendant, that she could.

R. L. Janes was summoned as a witness on behalf of plaintiff for the purpose of showing that any certificate, or certificates, formerly held by Joshua R. Nixon for his

sister passed into possession of the defendant on March 1, 1929. Inasmuch as Janes failed to make his appearance on account of sickness, the plaintiff and defendant agreed to stipulate what such witness' evidence would be, without admitting the truth thereof, and at the suggestion of the court, the same was made on the record, being taken in shorthand by the reporter.

Such stipulation was to the effect that Janes was at the home of Joshua R. Nixon on Monday (February 26, 1929), at which time Nixon had his private papers in a shoe box and among them were certain certificates of deposit *"which the said Joshua R. Nixon told the witness belonged to him and to Lucinda R. Nixon, and that he was paying taxes on certificates of deposit and money in her name and his own money amounting to eight thousand dollars; that he mentioned that he had told Lucinda she should convey one of these certificates to somebody to look after her, and that Lucinda had refused to do so; that thereupon the said Joshua R. Nixon replaced these certificates in the shoe box and tied a string around the box;* that this box was placed in an oak press standing in the bed room"; that on the day Nixon left for the hospital, to-wit, March 1, 1929, the latter, in the presence of witness, told the defendant, Letha M. Shaver, to get his private papers and keep them for him until he returned; that defendant thereupon took the box, "still tied with what looked to be the same string, and thereupon left the house with it," etc. After a part of his evidence had been introduced, the plaintiff requested that the stipulation be read to the jury. On motion of defendant and over objection of plaintiff, the court struck that portion of the stipulation which we have italicized, as hearsay, and had the remainder read to the jury.

Plaintiff claims that it was error not to read the entire stipulation; especially in view of defendant's contention that her father had delivered certain certificates of deposit in his own name to her for safe-keeping on February 10, 1929, and the further testimony that when the administrator of Joshua R. Nixon, deceased, opened the

shoe box, delivered to defendant on March 1, 1929, it did not contain a single certificate of deposit.

"It has long been settled, as one of the exceptions to the general rule excluding hearsay, that the declarations of persons since deceased are admissible in evidence, provided the declarant had peculiar means of knowing the fact stated, and no interest to misrepresent it, and it was opposed to his pecuniary or proprietary interest." 3 Jones, Ev. 2133, section 1164. In accord: *Bartlett* v. *Patton,* 33 W. Va. 71, 10 S. E. 21. Such declarations are received because of the likelihood of their being true, of their general freedom from any reasonable probability of fraud, and because they cannot be set up or proven until the death of the party making them. The senior Nixon, who made the statement sought to be introduced here, was dead at the time of trial; he had been looking after the affairs of his sister for many years. He was answerable to his sister for the safe-keeping of the certificate. Although the opposition to pecuniary or proprietary interest may be very remote, there was, on the other hand, no apparent reason for the declarant to misrepresent the facts. He recognized a duty to care for his sister and preserve her estate. All accumulations of interest seem to have been added to the principal. Hence, we believe, under the circumstances, the excluded portion of the declaration was admissible, and that the court erred in excluding it.

Prior to the production of handwriting experts, whose testimony was confined to a comparison of the purported signatures on the certificate of deposit with the signature of Letha M. Shaver, as grantor in a deed, the court had refused to admit, for purposes of comparison certain postal cards, signed "Letha S." and addressed to various members of her brother's family, as a part of Carl V. Nixon's testimony. And later, after defendant had taken the stand, plaintiff's counsel, on cross-examination, asked witness if she did not write a particular card, theretofore proffered with Carl V. Nixon's testimony. The court, upon objection of defendant, did not require her to answer.

"In any civil suit or proceeding at law or in equity, and in any criminal action or proceeding, any writing proved to the satisfaction of the judge to be in the handwriting of the person who is alleged to have written it, and not written for the purposes of comparison, except under the supervision of the judge, may be used with or without the testimony of witnesses for the purpose of making a comparison with a disputed writing as evidence of the genuineness or otherwise of such disputed writing." Code 1931, 57-2-1. Generally when a writing is offered as a standard of comparison, the court's decision as to the pertinency of such evidence is conclusive, unless it is shown to be without foundation or based on some erroneous application of legal principles. *Poole* v. *Beller,* 104 W. Va. 547, 140 S. E. 534. The statute, *supra,* requiring the writings to be proved to the satisfaction of the court, is a legislative adoption of the general rule that it is the province of the court to say what is evidence and then the province of the jury to determine its efficacy. But, as already shown, the defendant was confronted with one of the postal cards previously sought to be introduced and was asked if she did not write the same. The trial court sustained defendant's objection, and the question was not answered. In *Painter* v. *Long,* 69 W. Va. 765, 72 S. E. 1092, this Court held that the admission of genuineness of the paper could be drawn from the defendant on cross-examination. The cross-examination in this particular properly related to Mrs. Shaver's evidence in chief to the effect that she did not cash the certificate of deposit and take the money. Moreover, plaintiff could have called defendant as his own witness. Hence it was error not to permit the question as to the authenticity of the postal card to be answered. Had it been answered in the affirmative, the card would have been clearly admissible as a standard of comparison.

Some hours after the jury had retired to determine their verdict, they returned to the court room and requested a reading of the stipulation as formerly given in evidence. The court, upon objection by counsel for defendant, refused to comply with such request, saying

that it was not such a paper as the jury, under Code 1931, 56-6-23, might take to their room.

Granting that the statute referred to gives no such right, was not the matter proper, under our practice, to be re-read to the jury? In *Koontz* v. *Mylius*, 77 W. Va. 499, 87 S. E. 851, the court held that it was certainly not error to permit the second reading to the jury of the timber estimate at their request, or the request of one of their number.

Under the broad powers of the court over the jury the request in this case was one which would seem under all the rules of reasoning to have been in the power of the court to grant. The fact that the jury had considered the case for sometime before the request was made is in itself evidence that the stipulation asked for was potent. It was therefore error to refuse the request.

With the exception of certain immaterial statements in defendant's instruction No. 1, which were based on the "original" instead of the "amended" bill of particulars, we find no error in the court's action in the giving or refusing of instructions. Plaintiff's No. 1 was rather involved, and properly refused; especially in view of the fact that No. 2 clearly presented the case. Plaintiff's Nos. 2-A and 6 were properly refused. In so far as instructions were concerned, the case was fairly submitted to the jury.

In view of the errors hereinbefore pointed out, we are of opinion to reverse the judgment and remand the case for a new trial.

*Judgment reversed; verdict set aside;*
*new trial awarded.*