412 S.E.2d 242

**Charles H. CALE, Okey P. Cale, Patricia A. McLaughlin, Robert L. Cale, Wilma Elder, and William F. Cale, Plaintiffs Below, Appellants,**

**v.**

**Sara E. NAPIER, Floyd J. Cale, Ada I. Morrison, Robert B. Blake, Executor of the Estate of Dora E. Cale, and Commercial Banking and Trust Company, as Executor of the Estate of Dora E. Cale, Under the Last Will and Testament of Dora E. Cale dated May 1, 1987, Defendants Below, Appellees.**

No. 20000.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 6, 1991.

---

James M. Bradley, Jr., Albright, Bradley & Ellison, Parkersburg, for appellants.

J. Michael Weber, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, for appellees Sara E. Napier, Floyd J. Cale, Ada I. Morrison, Robert B. Blake, Executor of the Estate of Dora E. Cale.

MILLER, Chief Justice:

Charles H. Cale, Okey P. Cale, Patricia A. McLaughlin, Robert L. Cale, Wilma Elder, and William F. Cale, plaintiffs below, appeal a final order of the Circuit Court of Wood County, dated April 20, 1990, denying their motion for a new trial. The plaintiffs contend that the trial court erred in directing a verdict in favor of Sara E. Napier, Floyd J. Cale, Ada I. Morrison, Robert B. Black, and Commercial Banking and Trust Company at the close of the plaintiffs' case-in-chief. We agree; therefore, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

I.

William I. Cale died on July 31, 1987, at the age of ninety-one. His wife, Dora E. Cale, died seven months later at the age of eighty-eight. The Cales were survived by nine children, all of whom are parties to this litigation.

In early 1987, the Cales contacted an attorney regarding some legal work. Among other services, the Cales wanted the attorney to review the wills that they had previously prepared because they were not exactly sure how they had distributed their property.

After reviewing the wills, the attorney explained to the elderly couple that they had devised all of their assets to four of their children and had excluded the remaining five.[1] After learning of this disposition, Mrs. Cale responded: "That isn't right. I love all my children equally and all my children should be treated equally." Accordingly, the Cales directed the attorney to draft two new wills in which, upon the death of both of them, the property would be distributed equally among all of their children. The new wills were signed on May 1, 1987.

Three months later, an unidentified male called the Cales' attorney at his office and told him: "Someone wants to talk to you." Mrs. Cale then got on the telephone and told the attorney that her husband had had a stroke. Moreover, she informed him that his services were no longer needed and asked him to send her a bill. Four days later, Mr. Cale died.

---

1. In the first will, the Cales left all of their assets to Sara Ellen Napier, Floyd Jackson Cale, Ada Irene Morrison, and Wilma Clariece Elder.

Shortly thereafter, Mrs. Cale moved in with Sara and Nick Napier, her daughter and son-in-law. She left their home on only two occasions prior to her death. On one such occasion, she went to sign a new will, dated October 7, 1987, in which she gave the five plaintiffs $500 each, gave the defendant Floyd L. Cale a 96–acre farm, and distributed the bulk of the remaining property equally among the four other children who are also defendants. She named the attorney who drafted the will as the executor of her estate. Mrs. Cale died in March of 1988, and her estate was appraised at approximately $158,000.

On April 18, 1988, the plaintiffs filed suit in the Circuit Court of Wood County, contending that Mrs. Cales' third will was null and void because it was obtained under undue influence. At the close of the plaintiffs' case-in-chief, the trial court directed a verdict for the defendants. The plaintiffs appeal.

## II.

■ The standard of appellate review for directed verdicts is set forth in Syllabus Point 1 of *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978):

" ' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85 [163 S.E. 767 (1932) ]." ' Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250 [100 S.E.2d 808] (1957)."

*See also Hess v. Arbogast*, 180 W.Va. 319, 376 S.E.2d 333 (1988). Thus, under this standard, we construe the evidence in the light most favorable to the plaintiffs.

## III.

■ In Syllabus Point 7 of *Floyd v. Floyd*, 148 W.Va. 183, 133 S.E.2d 726 (1963), we explained:

"Undue influence cannot be based on suspicion, possibility or guess that such

undue influence had been exercised, but must be proved and the burden of proof of such issue rests on the party alleging it."

*See also Frye v. Norton*, 148 W.Va. 500, 135 S.E.2d 603 (1964); *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123 (1953), *overruled on other grounds, State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). Although mere speculation will not sustain the plaintiffs' burden of proof, both direct and circumstantial evidence can be used, as we stated in Syllabus Point 15 of *Ritz v. Kingdon, supra:*

"Undue influence which will invalidate a will is never presumed but must be established by proof which, however, may be either direct or circumstantial."

*See also Frye v. Norton, supra.*

■ The plaintiffs' evidence established that Mrs. Cale was very old and weak when she executed the will. In *Ebert v. Ebert*, 120 W.Va. 722, 734, 200 S.E. 831, 837 (1938), we held that advanced age or physical or mental infirmities of the testator can be shown to establish that undue influence was exerted: "[I]t does not require authority to sustain the proposition that such influence is more easily shown to exist in cases where advanced age, physical or mental weakness is involved." Other jurisdictions are in accord. *See, e.g., In re Van Aken's Estate*, 281 So.2d 917 (Fla.App. 1973); *Schmidt v. Schwear*, 98 Ill.App.3d 336, 53 Ill.Dec. 766, 424 N.E.2d 401 (1981); *Matter of Will of Adams*, 529 So.2d 611 (Miss.1988); *Neal v. Caldwell*, 326 Mo. 1146, 34 S.W.2d 104 (1930); *In re Estate of Novak*, 235 Neb. 939, 458 N.W.2d 221 (1990); *Matter of Estate of Gonzales*, 108 N.M. 583, 775 P.2d 1300 (1988), *cert. quashed*, 108 N.M. 197, 769 P.2d 731 (1989); *Griffin v. Baucom*, 74 N.C.App. 282, 328 S.E.2d 38, *review denied*, 314 N.C. 115, 332 S.E.2d 481 (1985); *Taliaferro v. Green*, 622 S.W.2d 829 (Tenn.App.1981); *Redford v. Booker*, 166 Va. 561, 185 S.E. 879 (1936). *See generally* 79 Am.Jur.2d Wills § 434 (1975 & Supp.1991).

■ The plaintiffs also introduced the testimony of Mrs. Cale's treating physician,

Matthew Godlewski, M.D., who testified that he saw Mrs. Cale before and after she executed the October 7, 1987 will. The doctor observed that Mrs. Cale "was very confused, disoriented. She was unable to keep up with any sensible conversation." Moreover, Dr. Godlewski testified that Mrs. Cale had a long history of severe alcohol abuse, and it appears that she could be controlled by withholding alcohol.[2]

A second witness, Charlotte Potter, an assistant vice president and trust officer at Commercial Banking and Trust Company, testified that the bank had set up an agency account for Mrs. Cale when her husband died. Under the terms of this account, the bank agreed to pay Mrs. Cale's bills and to invest the remaining money. Ms. Potter testified that she paid Sara and Nick Napier $250 a week from the account to take care of Mrs. Cale's personal needs. She further testified that she had had several telephone conversations with Mrs. Cale where she overheard Sara Napier telling Mrs. Cale what to say.

■ Finally, the attorney who prepared Mrs. Cale's second will testified that Mrs. Cale had stated that she wanted to leave her property equally among her children. This will was executed on May 1, 1987, only five months before her third will was executed in October. We, along with other courts, have stated that in a will contest on a charge of undue influence, evidence is admissible to show that the testator had previously either expressed an intention to make a contrary disposition of the property or had a prior will which made a disposition contrary to that of the contested will. *See Ebert v. Ebert, supra. See also In re Westfall's Estate,* 74 Ariz. 181, 245 P.2d 951 (1952); *Oliver v. Griffe,* 8 Ark.App.

152, 649 S.W.2d 192 (1983); *Disbrow v. Boehmer,* 711 S.W.2d 917 (Mo.App.1986); *Matter of Nelson's Estate,* 274 N.W.2d 584 (S.D.1978); *Martin v. Phillips,* 235 Va. 523, 369 S.E.2d 397 (1988); *Franciscan Sisters Health Care Corp. v. Dean,* 102 Ill.App.3d 61, 57 Ill.Dec. 797, 429 N.E.2d 914 (1981), *aff'd, in part, remanded, in part,* 95 Ill.2d 452, 69 Ill.Dec. 960, 448 N.E.2d 872 (1983). Four days after Mr. Cale's death, Mrs. Cale moved in with her daughter, Sara Napier. Three months later, the third will was executed which substantially changed the testamentary disposition of the second will to favor the daughter and her husband.

Considering the foregoing evidence in the light most favorable to the plaintiffs, we find that the plaintiffs have sufficiently met their burden of proof and that the question of undue influence should have been submitted to the jury.

### IV.

■ Because further proceedings will be necessary, we address the plaintiffs' other assignment of error. The plaintiffs contend that the trial court erred in refusing to allow William F. Cale to testify about personal transactions he had with the deceased because such testimony is prohibited under W.Va.Code, 57–3–1 (1937), commonly known as our "Dead Man's Statute."[3] In Syllabus Point 10 of *Moore v. Goode,* 180 W.Va. 78, 375 S.E.2d 549 (1988), we stated:

"To summarize the basic operation of the Dead Man's Act, W.Va.Code, 57–3–1, a concurrence of three general conditions must be met in order to bar the witness's testimony. First, the testimony must relate to a personal transaction with a de-

**2.** This was part of the testimony sought to be elicited from William F. Cale. The trial court refused to allow William Cale to testify about his mother's alcohol abuse because it was barred under the Dead Man's Statute. For a discussion on this issue, see Part IV, *infra.*

**3.** W.Va.Code, 57–3–1, provides, in pertinent part:

"No person offered as a witness in a civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination [who is] deceased[.]"

ceased or insane person. Second, the witness must be a party to the suit or interested in its event or outcome. Third, the testimony must be against the deceased's personal representative, heir at law, or beneficiaries or the assignee or committee of an insane person."

William F. Cale is the son of Dora Cale, is a beneficiary under both wills, and is a plaintiff in this proceeding, which is against the deceased's executor. His testimony dealt with a personal transaction with the deceased. Thus, under the three criteria set forth in *Moore v. Goode, supra,* it initially appears that Mr. Cale's testimony was properly excluded.

■ However, as the plaintiffs correctly argue, we have recognized an exception to the Dead Man's Statute when the witness's testimony is adverse to his own interest. In Syllabus Point 2 of *Holland v. Joyce,* 155 W.Va. 535, 185 S.E.2d 505 (1971), we articulated this longstanding exception:

> "A party to a civil action may testify as a witness in regard to a personal transaction or communication between such witness and a person who is deceased at the time such testimony is given without violating the provisions of Code, 1931, 57–3–1, as amended, if the testimony thus given is against the interest of the party so testifying as a witness."

*See also Sperry v. Clark,* 123 W.Va. 90, 13 S.E.2d 404 (1941); *Bailey v. Bee,* 73 W.Va. 286, 80 S.E. 454 (1913).

The plaintiffs assert that under the contested will, William Cale would receive $22,720 and under the preceding will he would receive only $19,344.99.[4] Thus, they contend that Mr. Cale would be testifying adversely to his pecuniary interest. The defendants counter that the adverse interest exception is limited to those situations where the witness would not receive anything if his testimony were believed. From a review of other cases in this area, we do not believe the exception is so limited.

The Supreme Court of North Carolina in *Sanderson v. Paul,* 235 N.C. 56, 69 S.E.2d 156 (1952), considered whether the testimony of a witness which was offered to attack the validity of a deed was adverse to his interest. If the attack was successful and the deed was set aside, the witness was entitled to a one-fourth undivided interest in the land in fee, subject to a dower interest. If the deed was upheld, the witness was entitled to a one-half undivided interest in the land, but her fee title would be defeasible should she die without children.

The Supreme Court of North Carolina declined to hold that the witness's testimony was barred by the Dead Man's Statute. Rather, it remanded the case so that the trial court could "decide which of the two interests was the more immediately valuable." 235 N.C. at 60, 69 S.E.2d at 159–60. The North Carolina court instructed the jury to make this finding and then decide if the witness's pecuniary interest was adversely affected.

The Alabama Supreme Court in *Cannon v. Cannon,* 345 So.2d 288 (Ala.1977), addressed whether the testimony of two witnesses was sufficiently adverse to their pecuniary interests. The witnesses were being offered to attack a trust of certain real property. Each had a one-fifth interest in the trust. If the trust were found invalid, each witness would have a one-sixth interest in fee in the property. The trial court refused to admit their testimony. The Supreme Court affirmed because there was not a substantial pecuniary difference in what the witnesses would receive whether or not the trust was found valid.

A rather narrow pecuniary interest was found sufficiently adverse to enable the witness to testify in *Franciscan Sisters Health Care Corp. v. Dean, supra.* The witness was testifying in favor of the validity of a will and describing the testatrix's condition when the will was executed. Under the will, the witness would inherit $1,000. If the will was found to be void, the witness would inherit the household

---

**4.** The defendants dispute these amounts. The record is unclear on the precise amount William F. Cale would receive under either will. If the plaintiffs want to introduce this testimony at the retrial, this evidence must be more fully developed.

furnishings, which were valued at slightly more than $1,100, under a preceding will. The court concluded that the "testimony was therefore adverse to her pecuniary interest and admissible." 102 Ill.App.3d at 71, 57 Ill.Dec. at 804, 429 N.E.2d at 921.

In *Shanahan's Estate v. Bowen*, 59 Ill. App.3d 269, 16 Ill.Dec. 635, 375 N.E.2d 508 (1978), a mother, who would receive 25 percent of the estate under a will, and her son, who would receive 8 percent, both testified against the estate. The executor had brought a proceeding against the decedent's granddaughter to recover $12,570, which the executor claimed was a loan. The two witnesses testified that the money was a gift. The court ruled that the testimony was adverse to the witnesses' pecuniary interests because if the loan were recovered, it would increase the value of their share of the estate.

The purpose of requiring an adverse interest to be shown is to demonstrate the reliability of the witness's testimony. The common sense view is that one would not testify against his or her pecuniary interest unless what was stated was true, thus minimizing the possibility of fraud.

█ In a parallel vein, the common law recognized that a statement which was against the declarant's pecuniary or proprietary interest was an exception to the hearsay rule. The statement could be admitted if the declarant was unavailable to testify. We stated this principle in Syllabus Point 1 of *Nixon v. Shaver*, 115 W.Va. 469, 176 S.E. 849 (1934):

> "Declarations of a person now deceased are admissible as evidence for the purpose of establishing a relevant fact, where it appears that the declarant had peculiar means of knowing the fact stated, and no interest to misrepresent it, and it was opposed to his pecuniary or proprietary interest."

This exception is also recognized in Rule 804(b)(3) of the West Virginia Rules of Evidence, which states, in part:

> "(b) *Hearsay Exceptions.*—The following are not excluded by the hearsay

rule if the declarant is unavailable as a witness:

\*　　\*　　\*　　\*　　\*　　\*

> "(3) Statement against Interest.—A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest ... that a reasonable man [person] in his position would not have made the statement unless he believed it to be true."

The core concept of reliability is based on the fact that a reasonable person would not have made the statement which affected his or her pecuniary interest unless he or she believed the statement to be true. These same considerations of reliability are present when a witness is offered to testify against the witness's pecuniary interest under the Dead Man's Act. The only difference is that the witness is available to testify. The critical determination is whether there is a sufficient impairment of the witness's pecuniary interest to satisfy the court that the statements offered are reliable.

█ Thus, we conclude that under W.Va. Code, 57–3–1, a witness in a civil action may testify about a personal transaction with the decedent so long as the testimony is adverse to the witness's pecuniary interest. It is not necessary that the witness's testimony would result in completely extinguishing his pecuniary interest. It is sufficient if the testimony adversely affects the pecuniary interest to the point that a reasonable person would not have made the statements unless he or she believed them to be true. On remand, the trial court should consider whether the witness, William F. Cale, should testify under the foregoing test.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Wood County.[5]

Reversed and remanded.

---

**5.** The defendants further assert that the petition for appeal was not timely filed because it was

not filed within four months of the entry of the final order or within four months of the date our new four-month appeal period became effective. The final order was entered April 20, 1990. Effective July 1, 1990, the legislature shortened the period for appeals from circuit courts to this Court from eight to four months. W.Va.Code, 58–5–4 (1990). All cases in which a final order was entered before July 1, 1990, are governed by the eight-month appeal period. The plaintiffs' petition for appeal was filed with this Court on December 11, 1990, clearly within eight months of the lower court's final order.