# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**MaryBeth Printz,**
**Plaintiff Below, Petitioner**

**FILED**

April 25, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0495** (Jefferson County 12-C-1204)

**Charles F. Printz Jr., individually and in his capacity as the**
**Executor of the Estate of Charles Frances Printz and as the**
**Executor of the Estate of Bethel H. Printz,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner MaryBeth Printz, plaintiff below, appeals the "Final Order Granting Motion for Summary Judgment" entered by the Circuit Court of Jefferson County on April 9, 2013. Respondent Charles F. Printz Jr., defendant below, individually and in his capacity as the Executor of the Estate of Charles Frances Printz and as the Executor of the Estate of Bethel H. Printz, responds in support of the order. Petitioner is represented by John F. Hussell IV, Staci N. Criswell, and Mary R. Rowe. Respondent is represented by Kenneth J. Barton Jr. and Austin M. Hovermale.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I. Background and Procedural History

Petitioner and respondent are the adult children of Charles Francis Printz ("testator") and Bethel H. Printz ("testatrix") (collectively "testators"). Over the years, the testators executed numerous wills. Petitioner asserts that prior to 2008, the wills provided for an equal distribution to petitioner and respondent of the testators' residuary estates, including all shares of Aspen Pool Farms, Inc., a farm owned by testator.

On January 21, 2008, the testators each executed new wills that changed their distribution plans. Each will gave respondent one-half of the respective decedent's residuary estate outright, while the other one-half was to be held in trust for the benefit of petitioner during her lifetime. Respondent was named trustee. Upon petitioner's death, the remaining trust assets were to be distributed to respondent's children.

1

The January 21, 2008, wills were prepared by Michael Caryl, who had been the testators' estate planning attorney for approximately twenty years. Mr. Caryl was deposed in the course of this litigation. He testified that during a meeting on November 20, 2007, the testator told him that the testators wanted to change their wills because they were concerned that petitioner's ex-husband might obtain a portion of their estates through petitioner's daughter. The testator told him that petitioner was recently divorced, living in Alaska, and her situation was unstable. The testator told him that petitioner's daughter was residing with petitioner's ex-husband.

The January 21, 2008, will was the testatrix's last will. However, the testator executed another will on October 1, 2008, which was his last will. The testator's last will provided that upon the death of the testatrix, respondent was to receive all of the capital stock in Aspen Pool Farms. After distribution of the stock, petitioner was to receive the lesser of the value of all remaining property or $750,000. Respondent was to receive all property remaining after distribution to petitioner.

Mr. Caryl testified that the testator's October 1, 2008, will resulted from a meeting he had with the testator on September 10, 2008, where the testator expressed his desire to leave the family farm to respondent and provide petitioner with $750,000 outright.

When their respective final wills were executed in 2008, the testatrix was eighty-nine years old and the testator was ninety-three years old. The testator died on Sept. 30, 2011, and the testatrix died on October 21, 2011. Both left estates of significant monetary value. Their wills were admitted to probate and, pursuant to the wills, respondent was appointed as executor.

In 2012, petitioner filed the instant lawsuit seeking to, inter alia, set aside the testators' final wills and revive the last wills they had each executed prior to 2008. She alleged that respondent had exerted undue influence upon their parents and had tortiously interfered with testamentary bequests meant for her. Respondent denied the allegations and, after discovery, moved for summary judgment. By order of April 9, 2013, the circuit court granted summary judgment for respondent and dismissed the case with prejudice.

## II. Discussion

Petitioner now appeals the circuit court's April 9, 2013, summary judgment order to this Court. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

### A. Undue Influence Count

In her first assignment of error, petitioner argues that it was error for the circuit court to find that no genuine issue of material fact exists on her undue influence claim.

2

Our law regarding undue influence is well-established. "Undue influence, to avoid a will, must be such as overcomes the free agency of the testator at the time of actual execution of the will.' Syllabus Point 5, *Stewart v. Lyons*, 54 W.Va. 665, 47 S.E. 442 (1903)." Syl. Pt. 10, *James v. Knotts*, 227 W.Va. 65, 705 S.E.2d 575 (2010). Furthermore,

> "[t]he influence resulting from attachment or love, or mere desire of gratifying the wishes of another, if free agency is not impaired, does not affect a will. The influence must amount to force or coercion destroying free agency. It must not be the influence of affection or attachment. It must not be mere desire of gratifying the wishes of another, as that would be strong ground to support the will. Further, there must be proof that it was obtained by this coercion, by importunity that could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear." Syllabus Point 6, *Stewart v. Lyons*, 54 W.Va. 665, 47 S.E. 442 (1903).

Syl. Pt. 11, *Knotts*. This Court has established the threshold a plaintiff must overcome in order to succeed on an undue influence claim:

> "In an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercise[d] is not sufficient to support a verdict which impeaches the will upon that ground." Syllabus Point 5, *Frye v. Norton*, 148 W.Va. 500, 135 S.E.2d 603 (1964).

Syl. Pt. 3, *Milhoan v. Koenig*, 196 W.Va. 163, 469 S.E.2d 99 (1996). Similarly, "'[u]ndue influence cannot be based on suspicion, possibility or guess that such undue influence had been exercised, but must be proved and the burden of proof of such issue rests on the party alleging it.' Syllabus Point 7, *Floyd v. Floyd*, 148 W.Va. 183, 133 S.E.2d 726 (1963)." Syl. Pt. 2, *Cale v. Napier*, 186 W.Va. 244, 412 S.E.2d 242 (1991).

Circumstantial evidence may be used to prove undue influence. "Undue influence which will invalidate a will is never presumed but must be established by proof which, however, may be either direct or circumstantial." Syl. Pt. 15, *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123 (1953), *overruled on other grounds by* Syl. Pt. 6, *State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). However, if circumstantial evidence is used, it must be inconsistent with any theory other than undue influence. "To warrant a finding of undue influence which is based on circumstantial evidence the established facts must be inconsistent with any theory other than that of undue influence." Syl. Pt. 19, *Ritz* at 192, 79 S.E.2d at 126. We expressed this same principle in *Floyd*: "It is true that undue influence may be proved by circumstantial evidence, but to warrant the finding of undue influence from circumstantial evidence such proof must be consistent with the exercise of undue influence and inconsistent with any other theory than that of undue influence." *Id.* at 195, 133 S.E.2d at 734.

To support her undue influence claim, petitioner argues that the testators' 2008 wills left substantially more to respondent than to her, unlike all other wills the testators had executed in

their lifetimes. Petitioner alleges that respondent dictated the will terms to Mr. Caryl. She points out that Mr. Caryl and respondent are both lawyers, have known one another for over thirty-five years, and have been partners at the same law firm since 1988. She contends that respondent communicated with Mr. Caryl about the wills and paid for Mr. Caryl's legal services. She also asserts that the testators were of advanced age and were dependent upon respondent, who lived nearby. Petitioner asserts that by 2011, respondent had control of the testators' finances.

Respondent denies exerting undue influence. He argues that the testators had reason to change their estate plans, that these reasons were expressed to Mr. Caryl and others, and that the wills reflected their wishes. He was not present during the testator's meetings with Mr. Caryl or when the testators executed their wills. Mr. Caryl testified that he sent the draft wills directly to the testators for their review, and the testators merely had respondent communicate non-substantive changes back to Mr. Caryl. Finally, the testators' personal physician and Mr. Caryl opined that the testators were of sound mind and possessed the requisite testamentary capacity at the time they executed their respective final wills. Respondent asserts that at the time the final wills were executed in 2008, he was not yet handling his parents' financial affairs.

Petitioner's allegations of undue influence rest entirely upon circumstantial evidence, including respondent's proximity to their parents; respondent's personal and professional relationship with Mr. Caryl; and respondent's communications with Mr. Caryl about these wills. She has presented no direct evidence of undue influence exerted upon the testators, and she does not argue that further discovery is needed to obtain such evidence. As set forth above, *Ritz* and *Floyd* instruct that to warrant a finding of undue influence based upon circumstantial evidence, the established facts must be inconsistent with any theory other than that of undue influence. The circuit court found that petitioner cannot meet this burden as a matter of law, and we agree. There is evidence consistent with a theory other than that of undue influence—i.e., the testators desired to change their wills after petitioner's divorce because they were concerned that her ex-husband might obtain a share of their estates through petitioner's daughter, and the testator wanted to leave his farm, intact, to the child who resided in the area.

Relying on cases from other states, petitioner urges us to impose a presumption of undue influence whenever a beneficiary to a will participates in the drafting of the will. She also advocates for a higher burden of proof for the advocates of a will when the testator's attorney has a professional relationship with a beneficiary. However, what petitioner proposes would conflict with our long-standing law that undue influence may never be presumed. We decline petitioner's invitation to change our existing law.

Because petitioner cannot meet her burden of proving undue influence by circumstantial evidence, we find no error in the circuit court's award of summary judgment for respondent.

## B. Tortious Interference Count

Petitioner also asserts that the circuit court erred in granting summary judgment for respondent on her tortious interference count. She argues that the 2008 wills contain provisions that significantly benefit respondent and his children at the expense of petitioner and her daughter—even though petitioner was a surviving child and, based on her parents' equal

4

treatment of the children in their prior wills, she had an expectation of inheriting equally.

West Virginia common law provides a cause of action for tortious interference with a testamentary bequest. Syl. Pt. 2, *Barone v. Barone*, 170 W.Va. 407, 294 S.E.2d 260 (1982). However, the circuit court concluded that petitioner's claim for tortious interference is premised entirely upon her allegations of undue influence. The circuit court concluded that inasmuch as she could not prove undue influence as a matter of law, then her tortious interference claim must also fail. After reviewing the pleadings and the record on appeal, and under the facts of this particular case, we agree with the circuit court's conclusion and find no error in the award of summary judgment to respondent on this issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 25, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II