376 S.E.2d 333

**Marie HESS**

v.

**Vere ARBOGAST, et al. and IOOF Tygart Valley Lodge No. 6.**

**No. 17913.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

William F. Byrne, Morgantown, for appellant.

Steven Hunter, Charleston, for Arbogasts.

Richard W. Cardot, Elkins, for IOOF Lodge.

McHUGH, Chief Justice:

This case is before the Court upon the appeal of Marie Hess from the September 11, 1986 and September 29, 1986 orders of the Circuit Court of Randolph County which, respectively, granted the appellees' motions for a directed verdict and denied the appellant's motion for a new trial. The appellant contends that the trial judge erred when he failed to construe all inferences in favor of the nonmoving party in granting the motion for a directed verdict. We reverse and remand, with directions to award a new trial consistent with this opinion.

Hugh I. Currence died in 1982, at the age of 82. His daughter, Marie Hess, sought to invalidate a deed and a will made by her father in 1979. She alleged that her father was incompetent during both transactions and that: the appellees, Vere and Ruth Arbogast, fraudulently induced the sale of certain property; a member of the International Order of Odd Fellows (IOOF) Tygart Valley Lodge No. 6 unduly influenced her father when he made his will. Only those facts pertinent for determining the propriety of granting a directed verdict for the appellees will be discussed below.

In early August, 1979, the decedent deeded a remainder interest in 44 acres, which contained his homestead, to the appellees, the Arbogasts. He retained a life estate for himself. The contract price was $10,-000.[1] During the month of August, a local bank issued a certificate of deposit (CD) and savings bonds in the names of "Hugh I. Currence or Vere Arbogast."[2] The total purchase price of the bonds and CD was $7225. Appellee Arbogast retained these bonds for some time until he was requested by Attorney Thomas Ross, draftsman of the will, to surrender them.

In late August, 1979, Parker Sycafoose (deceased) a friend, and fellow Odd Fellow of Currence, filed a verified petition with the Randolph County Commission to commence incompetency proceedings against Currence pursuant to W.Va.Code, 27-11-1(b) [1978].[3]

1. A cashier's check for $9,900, payable to Currence, issued three days prior to the date the property was deeded to the Arbogasts, was marked for purposes of identification, but was never introduced into evidence.

2. The CD bears the same date as the deed. The savings bonds merely list August, 1979 as the date of issuance. There is little evidence in the record explaining the relationship of the Arbogasts with the decedent.

3. The provisions on the appointment of a committee for persons found to be incompetent, contained in W.Va.Code, 27-11-1 [1978], in effect at the time Sycafoose petitioned the County Commission, was amended in 1981; however, the provisions of the 1978 statute are substantially similar to current Code, 27-11-1(b) [1981]. The statute provides for a county commission to conduct a hearing pursuant to a verified petition alleging incompetency. After appointment of counsel for the alleged incompetent, and a hearing, or in certain circumstances, without a hearing (see W.Va.Code, 27-11-1(b)), the county commission may find a person unable to care for himself or incapable of managing his funds and appoint a committee for the incompetent.

Parts of the petition were read into the record as an offer of proof. The petition tends to implicate the Arbogasts as taking advantage of Currence. At trial the appellant offered the evidence without explaining the manner in which it would be admitted under W.Va.R.Evid. 801-804, or the purpose of its admissibility. On appeal, the appellant's brief states that the verified petition of the deceased Sycafoose should have been admissible "in determining whether Mr. Currence was competent to execute a deed or will and whether he was unduly influenced in the execution of said instruments or whether he received adequate consideration in the conveyance."

The appellant, however, has not briefed the myriad relevancy and hearsay issues raised by admitting the verified petition against either the IOOF or the Arbogasts for either of the two

In October, 1979, the Randolph County Commission issued an order which found Currence "incompetent to manage his own affairs" based upon "evidence produced before the Commission." The order further appointed Sycafoose his committee. Sycafoose's attorney was Thomas Ross II. Another attorney had previously been appointed *guardian ad litem* for Currence when Sycafoose filed the petition.

Eight days after the order was issued, Currence signed a new will drafted by attorney Ross. The will devised and bequeathed all real, personal and mixed property to the IOOF.[4] Attorney Ross and his secretary witnessed the will. At trial, both testified that Currence appeared competent and did not wish to leave his estate to his children. Sycafoose was present when the will was signed.

A social worker for the West Virginia Area Agency on Aging, Evelyn Parrack, met with the decedent on a weekly to biweekly basis throughout 1979 and helped him manage his financial affairs. At trial Parrack testified that the decedent was unaware that he had conveyed a remainder interest in the property to the Arbogasts. She further testified that while driving Currence to attorney Ross's office for the purpose of executing the will, Currence stated that he owned the previously conveyed 44 acres and desired to devise it to the IOOF.

General practitioner, Dr. Ernest Hart, treated the decedent in 1977 for generalized arteriosclerosis and organic brain syndrome. At trial, he testified that in his expert opinion the decedent was "noncompos mentos" or "[d]isoriented as to time, place [and] circumstances" following his treatment in 1977. Over defense counsel's objection, Dr. Hart, who saw Currence on several occasions on a nonprofessional ba-

sis in 1979, was not permitted to testify about Currence's condition in 1979.

The judge also ruled the order declaring Currence incompetent was not admissible evidence because it was not relevant, and none of the parties could locate a transcript of the competency hearing, as required by statute. *See W. Va. Code,* 27–11–1(c) [1978]. At the close of all the evidence, the trial judge granted directed verdicts in favor of both appellees. Neither the order granting the directed verdicts nor the order denying the appellant's motion for new trial address the appellant's contentions of incompetency, fraudulent inducement and undue influence. *See W. Va. R. Civ. P.* 52(a).

### I

■ The standard of appellate review for directed verdicts is stated in syllabus point 1 of *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978):

' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85 [, 163 S.E. 767 (1932) ]." ' Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250 [, 100 S.E.2d 808] (1957).

Since the burden of proof and elements for a *prima facie* case for setting aside a deed and a will are different, and the appellant is challenging both the deed and the will, each transaction will be reviewed separately.

■ First, we will consider the deed. There is a rebuttable presumption that a grantor conveying real property is competent to execute a deed. Syl. pt. 1, *Ellison*

---

allegations, incompetency or undue influence, contained in the complaint against both appellees. Therefore, we decline to discuss the ruling. *See W.Va.R.Evid.* 103(b); syl. pt. 11, *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985); syl. pt. 3, *Higginbotham v. City of Charleston,* 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of*

*Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977). *See also Kerr v. Lunsford,* 31 W.Va. 659, 8 S.E. 493 (1888) (petition for declaration of lunacy not relevant for purposes of proving incompetency to make a will).

**4.** The value or contents of the Currence estate was not made part of the record.

v. *Lockard*, 127 W.Va. 611, 34 S.E.2d 326 [1945]. However, " ' "[l]ess evidence is required to establish incompetency where a grantor is aged, and enfeebled in body and mind. *Hardin v. Collins*, 125 W.Va. 81, 23 S.E.2d 916 [1942]." ' " *Sheppard [v.] Clay Peacock Coal Co.*, 169 W.Va. 106, 109, 285 S.E.2d 902, 904 (1982), *quoting Kadogan v. Booker*, 135 W.Va. 438, 446, 66 S.E.2d 297, 302 (1951). In addition to the grantor's age and general physical and mental health, the circumstances surrounding the execution of the deed are significant. " ' "Where in addition to mental weakness of the grantor it further appears that inequitable circumstances attended the execution of the deed, the courts will the more readily intervene to set it aside." ' " *Sheppard*, 169 W.Va. at 109, 285 S.E.2d at 904, *quoting Kadogan*, 135 W.Va. at 446, 66 S.E.2d at 302, *in turn quoting* 26 C.J.S. *Deeds*, § 54, then in effect.

There are several significant evidentiary matters that militate against a directed verdict. The decedent's treating physician testified that upon last seeing the decedent on a professional basis in 1977, the decedent was disoriented. The social worker who visited the decedent during the time period in which the deed was made, testified that the decedent was unaware that he had conveyed any interest in the property. The purchase money for the remainder interest was converted into survivorship bonds and appellee Vere Arbogast retained the bonds for several months.

Viewed in the light most favorable to the appellant, it could be inferred from these facts that the decedent was, at least, infirmed in August, 1979, and that the Arbogasts fraudulently induced him to sell the remainder interest. Therefore, the trial judge erred when he directed a verdict in favor of the Arbogasts.[5]

Second, in considering the status of the will, the burden is upon the proponent of the will to prove the mental capacity of the testator. Syl. pt. 7, *Montgomery v. Montgomery*, 147 W.Va. 449, 128 S.E.2d 480 (1962). Less mental capacity is necessary to make a will than a deed. Syl. pt. 16, *Kerr v. Lunsford*, 31 W.Va. 659, 8 S.E. 493 [1888]. Nonetheless, the proponent must prove that the decedent was capable of recollecting his property to be disposed of and knowing the objects of his bounty. Syl. pt. 19, *Kerr, supra*. The same testimony of the two disinterested witnesses, the physician and the social worker, viewed in a light most favorable to the appellant, create a factual question of the decedent's competency. Specifically, the social worker testified that upon driving the decedent to the will signing, the decedent stated that he planned to devise the previously conveyed 44 acres to the IOOF. *See* syl. pt. 6, *Freeman v. Freeman*, 71 W.Va. 303, 76 S.E. 657 (1912). It is well established that:

> Where there is competent evidence introduced during the trial of a case to impeach a will by both the proponent and contestant, but such evidence is in conflict with regard to mental capacity of the testator at the time the will was executed, it was a matter for jury determination.

Syl. pt. 8, *Montgomery v. Montgomery*, 147 W.Va. 449, 128 S.E.2d 480 (1962).

More importantly, whether $10,000 was adequate consideration is irrelevant. Appellant Hess alleged that the apparent immediate conversion of the purchase money into survivorship bonds was evidence that the $10,000 was a fraudulent inducement for the transaction. This unrefuted evidence, coupled with the evidence of Currence's physical condition, when viewed in a light most favorable to the appellant, creates "inequitable circumstances" making a directed verdict improper. *Kadogan, supra; Sheppard, supra.*

5. The appellees, the Arbogasts, relying on syl. pt. 3 of *McElwain v. Wells*, 174 W.Va. 61, 322 S.E.2d 482 (1984), argue on appeal that the appellant was unable to introduce evidence that $10,000 for a remainder interest in 44 acres was grossly inadequate consideration; therefore, the decision of the trial court should stand. While adequacy of consideration and competency are the factors in determining the validity of deeds where undue influence is alleged, we note that in reviewing the record, the cashier's check (which does not contain the Arbogasts' name) was never introduced into evidence. The Arbogasts did not testify at trial. Therefore, there is no direct evidence that consideration was paid.

Therefore, the trial judge erred when he granted a directed verdict for the IOOF.

## II

■ While we find that the trial judge erroneously directed verdicts in favor of both appellees, we will also address an evidentiary error which may recur on retrial. The error was raised at trial by the appellant and briefly addressed by all parties on appeal.

The trial judge found inadmissible a public document, the county commission order, which declared Currence incompetent to manage his funds. The order was filed eight days before Currence signed his will. The will was drafted by Ross, who testified that he was also (as counsel for Sycafoose, Currence's committee) present at the county commission hearing which resulted in the order. The order was offered by the appellant to prove Currence's incompetency at the time he signed the will.

The trial judge found the order inadmissible because after a brief search, during a recess, the parties could not locate the transcripts of the competency proceedings. The trial judge also found that the order was irrelevant, relying on syllabus point 8 of *Stewart v. Lyons*, 54 W.Va. 665, 47 S.E. 442 (1903), which held that evidence of a testator's inability to transact business affairs is insufficient to set aside a will.

The order is a public record. It's contents must be "otherwise admissible" in order for it to be admitted into evidence. *W.Va.R.Evid.* 1005. Since the order was offered to prove incompetency, the truth of the matter asserted, it is hearsay under *W.Va.R.Evid.* 801(c).[6] In order for hearsay to be admissible evidence, it must first be either excepted or exempted from the general bar from admissibility contained in Rule 802. Second, it must meet the general requirements for admissibility, authenticity, relevancy and competency. In this

case, it must be relevant. *State v. Golden*, 175 W.Va. 551, 336 S.E.2d 198 (1985).

*W.Va.R.Evid.* 803(8)(C) reads:

Rule 803. *Hearsay Exceptions: Availability of Declarant Immaterial.* The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) *Public Records and Reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In a case decided prior to the effective date of the *West Virginia Rules of Evidence, Ours v. West Virginia Department of Motor Vehicles*, 173 W.Va. 376, 315 S.E.2d 634 (1984), this Court was faced with an evidentiary issue which would now properly come under rule 803(8)(C). The Court held that the findings of a police officer in his accident report are admissible if sufficiently trustworthy.

The United States Supreme Court recently came to a similar conclusion, specifically regarding *Fed.R.Evid.* 803(8)(C), which is identical to our state rule. In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), the United States Supreme Court adopted "[a] broad approach to admissibility under Rule 803(8)(C)." *Id.*, at 170, 109 S.Ct. at 450. After reviewing the Federal Advisory Committee Notes, and congressional hearings on the matter, the Court rejected the narrow "fact versus opinion" test applied in some federal circuits, and held that Federal Rule 803(8)(C) "assumes admissibility in the first instance" of a publicly performed

---

**6.** Both incompetency and undue influence are alleged by the appellant. The appellant offered the order as proof of incompetency, not for "other purposes" under *W.Va.R.Evid.* 801(c). Therefore, we need not address whether the order could have been admitted under *W.Va. R.Evid.* 403 and 801(c). During *in camera* ques-

tioning, attorney Ross admitted he was present at the competency proceeding. He testified before the jury that prior to signing the will he questioned Currence and had no reason to believe Currence was incompetent. *See* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.3(B) (2d ed. 1986).

evaluative report, in its entirety, unless the opponent of the report establishes that the report is not "sufficiently trustworthy." *Id.*, at 164, 109 S.Ct. at 447.

Consistent with *Beech Aircraft*, we will continue to apply the analysis for public records and reports contained in *Ours* when evaluating such documents under the rules of evidence. Under *W.Va.R.Evid.* 803(8)(C), the contents of a public report, record or document are an exception to the hearsay rule and are assumed to be trustworthy, unless the opponent of the report establishes that the report is sufficiently untrustworthy.

In this case, the only evidence offered by the appellees to refute the assumption of admissibility was that the transcripts of the hearing which prompted the order could not be located after a brief search. See *Beech Aircraft, supra,* for additional challenges to trustworthiness. In another case decided prior to this Court's adoption of the rules of evidence, we held that the mere absence of an official document does not conclusively rebut the presumption that public officials have properly performed their duties. *See* Syl. pt. 2, *Roe v. M & R Pipeliners, Inc.,* 157 W.Va. 611, 202 S.E.2d 816 (1973). Furthermore, attorney Ross testified at an *in camera* proceeding that a competency hearing occurred and evidence was taken. Therefore, the order came within the hearsay exception under Rule 803(8)(C), since the failure to locate the transcript, in this instance, does not refute the presumption that the order is sufficiently trustworthy.

We now consider whether the order finding Currence incompetent to manage his funds was relevant. The trial court relied on syllabus point 8 of *Stewart v. Lyons,* 54 W.Va. 665, 47 S.E. 442 (1903), which reads: "Merely because a testator may be incompetent to safely transact the general business affairs of life does not render him incompetent to make a will."

At first glance, *Stewart* appears to be in conflict with syllabus point 13 of *Kerr v. Lunsford,* 31 W.Va. 659, 8 S.E. 493 (1888), which was not discussed in *Stewart:* "Evidence of business transactions by the testa-tor both before and after the execution of the will indicating his mental condition is admissible on the question of his capacity at the time the will was executed."

Actually, the two are not conflicting. In both *Kerr* and *Stewart* the evidence was admitted to establish incapacity to make a will; however, in *Stewart,* the evidence was actually disregarded due to its untrustworthiness.

In *Stewart,* a woman's capacity to make a will was litigated. Those challenging the will were permitted to place in evidence the testimony of an attorney that the woman was incompetent to transact business. However, the attorney had previously attempted to offer her less than adequate consideration for realty she owned. Rather than finding the testimony inadmissible, the Court merely commented on its weight, and the trustworthiness of the attorney's testimony:

> While [the attorney] says she [the testatrix] had no discriminating judgment, ... his contract with her goes to the contrary, and it seems he would have taken her deed ... if she had not brought suit.... The suit was necessary and prudent; yet [the attorney] ... gave that suit as evidence of her incapacity.

*Stewart,* 54 W.Va. at 675, 47 S.E. at 445.

In comparison, the Court in *Kerr* was faced with the precise issue faced by the trial judge in this case. In *Kerr,* the Court held that an order finding the testator insane, issued sixteen months before the testator made a will "was proper evidence." *Kerr,* 31 W.Va. at 677, 8 S.E. at 502.

Under *W.Va.R.Evid.* 403, and in consideration of *Kerr,* the order is relevant evidence of competency to sign a will. The probative value of the order, filed eight days before the petitioner signed the will, far outweighs its prejudicial effect, as the order merely found Currence incompetent to manage his funds.

Therefore, on retrial, the order finding Currence incompetent to manage his funds should be admitted into evidence, if offered to establish Currence's incompetency to

make a will,[7] since it is an exception to the hearsay rule under rule 803(8)(C) and is relevant under rule 403.[8]

For all the foregoing reasons, we reverse the trial court order granting a directed verdict in favor of the appellees and remand the case for a new trial consistent with this opinion.[9]

REVERSED AND REMANDED.

7. At the *in camera* hearing, the question related to the admission of the evidence regarding the will. The appellant expands the question on appeal to include the deed. We have restricted our discussion to the question before the trial judge. Similar reasoning would be applied to the deed.

8. A final evidentiary matter raised by the appellant concerned the testimony of the treating physician. The treating physician stopped treating Currence in 1977 but saw Currence on several occasions in 1978 and 1979. Depending on the observations of the physician, which are not part of the record before us, this evidence is admissible under either *W.Va.R.Evid.* 703 or 701. Opinions of even lay witnesses concerning competency in will dispute cases have traditionally been admitted into evidence, and the foundation for the opinion placed before the trier of fact. *Kerr, supra; Stewart, supra.*

9. The issues raised on appeal before this Court did not include the effect of Ross's preparation of the will and simultaneous representation of Sycafoose, as committee for Currence, or the effect of Sycafoose's presence during the will signing on any common law presumptions concerning undue influence. Further, Sycafoose's status in the IOOF was not disclosed at trial. *See* and *cf. McMechen v. McMechen,* 17 W.Va. 683 (1881); *In re Will of Elmore,* 42 App.Div.2d 240, 346 N.Y.S.2d 182 (1973); and *In re Estate of Joiner,* 156 So.2d 161 (Fla.1963).