513 S.E.2d 467

Debbie Sue GAMBLIN, In Her Own Right, and as Administratrix of the Estate of Steele Chance Gamblin, Appellant,

v.

FORD MOTOR COMPANY, a Delaware Corporation, Appellee.

No. 25010.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1998.

Decided Dec. 14, 1998.

Edgar F. Heiskell, III, Esq., Jerri F. Heiskell, Esq., Charleston, West Virginia, and Michael J. McManus, Esq., Jackson & Campbell, Washington, D.C., Attorneys for the Appellant.

Michael Bonasso, Esq., Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, and Brian D. Boyle, Esq., Teresa Kwong, Esq., O'Melveny & Myers LLP, Washington, D.C., Attorneys for the Appellee.

PER CURIAM:

In this case we must venture once again into the balkanized labyrinth of the complex law of hearsay, which is unquestionably one of the least understood and most misapplied areas of the law. This hearsay problem and this case comes to the Court upon an appeal of a final order of the Circuit Court of Preston County entered on July 7, 1997. The final order reflects a jury verdict in favor of the appellee, Ford Motor Company [hereinafter "Ford"], in this product liability action arising out of a single-automobile accident involving the Ford Bronco II. On appeal, the appellant, Debbie Sue Gamblin, contends that the circuit court erred by not admitting in evidence on hearsay grounds a National Highway Traffic Safety Administration [hereinafter "NHTSA"] letter regarding Ford's compliance or lack thereof with the agency's previous investigation into the alleged roll-over propensity of the Bronco II.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, we reverse the final order of the circuit court and remand this case for a new trial.

I.

This case arises out of a single-automobile accident that occurred on January 29, 1991. On that day, the appellant and her three-year-old son, Steele Chance Gamblin, were traveling west on Route 7, near Reedsville, Preston County, in a 1989 Ford Bronco II when they suddenly encountered a patch of black ice on the roadway causing the vehicle to slide towards a telephone pole. In an effort to avoid the telephone pole, the appellant pulled the steering wheel to the left causing the Bronco II to slide across the roadway into a ditch and rollover. Steele

Gamblin was ejected from the vehicle and was fatally injured. The appellant suffered injuries to her neck and back.

The appellant filed suit against Ford more than two years after the accident alleging that the Bronco II was defective. Ford moved for summary judgment on the grounds that the claim was barred by the statute of limitations. The appellant claimed that the statute of limitations was tolled by Ford's fraudulent concealment of the defects in the vehicle.[1] The circuit court found that the complaint set forth facts sufficient to present a jury question as to whether the claim was time barred and denied the motion.[2]

Trial ensued in January 1996, but ended in a mistrial because the jury was deadlocked on the statute of limitations issue. The case was scheduled for a second trial to begin on May 19, 1997.

Before the second trial commenced, counsel for the appellant wrote a letter to NHTSA alleging that Ford had withheld information from the agency during its 1988 investigation into alleged defects in the Bronco II. Counsel requested that NHTSA reopen its Bronco II investigation and enclosed documentation from other Ford Bronco II cases which indicated that Ford had in fact withheld some pre-production testing reports from the agency. In response to counsel's letter, Kenneth Weinstein, acting Assistant Chief Counsel of Litigation at NHTSA, wrote James Brown, Ford's Assistant General Counsel, requesting that Ford provide NHTSA with a written response to the attorney's allegations. More specifically, the letter stated, in pertinent part:

ODI's [ (NHTSA's Office of Defects Investigation) ] first investigatory letter (PE IR) to Ford, dated September 14, 1988, included requests to 'describe any and all tests and analyses at (1) Ford, (2) contractors, (3) suppliers, or (4) other entities, where

the Bronco II pitch, roll, yaw, steering response, understeer gradient, or lateral acceleration were tested, examined, considered, and or evaluated . . .' (Request 15) as well as 'any and all tests and analyses . . . pertaining to (a) the alleged defects or (b) used to establish the stability of the Bronco II' (Request 16). Both requests also asked Ford to 'furnish copies of all reports, notes, tables, graphs, film, photographs, or similar documentation which were developed for each . . .'

ODI's subsequent investigatory letter (EA IR) to Ford, dated November 8, 1989, including the following request (No. 6) that essentially sought the same information covered by requests No. 15 and 16 from the PE IR and requested other information as well:

. . . describe all tests and analyses at (1) Ford, (2) contractors, (3) suppliers, (4) other entities pertaining to (a) the subject alleged defects, (b) used to establish the handling or stability of the Bronco II, (c) the center of gravity and change of the center of gravity under various conditions, or (d) comparison of the handling and stability characteristics between the Bronco II and other vehicles. Furnish copies of all reports, notes, tables, graphs, film, photographs, or similar documentation which were developed for each. Identify when each activity was initiated and concluded or whether it is still ongoing.

The requests for test descriptions and documentation in both of ODI's investigatory letters are framed very broadly, and are not limited to testing of production model vehicles.

We request that Ford provide this office with a written response to Mr. Heiskell's allegations, not later than November 8, 1996. In addition, Ford must furnish with that response all testing documentation

---

1. The record indicates that NHTSA launched an investigation of the Bronco II in August 1988 based on a citizen complaint regarding a Bronco II rollover accident. The investigation was closed two years later with the agency stating that there was no reasonable expectation that further investigation would lead to the determination of a safety-related defect.

2. After the court denied the summary judgment motion, Ford filed a petition for a writ of prohibition with this Court to keep the trial from proceeding. The petition was refused.

(including, but not limited to 'development testing' and other testing of prototype or other pre-production vehicles) that is responsive to the ODI requests above, and that Ford had previously failed to furnish to ODI. The submitted information is to include, but not be limited to, all written reports or documents; transcriptions, notes, or other documentation of oral communications; files, videotapes, and still photographs; and information contained in electronic or other storage media.

During the second trial, the circuit court refused to admit the Weinstein letter in evidence finding that it was inadmissable hearsay. At the end of the trial, the jury rendered a verdict in favor of Ford on all claims. The appellant moved for a new trial on the grounds that the Weinstein letter had been improperly excluded at trial. The motion was denied and this appeal followed.

## II.

■ The single assignment of error in this case concerns whether the trial court erred by refusing to admit the Weinstein letter in evidence. We have previously held that: "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 6, *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983). *See also* Syllabus Point 2, *State v. Perolis*, 183 W.Va. 686, 398 S.E.2d 512 (1990); Syllabus Point 5, *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986).

The appellant contends that the NHTSA issue was of great consequence to the merits of her case because Ford's concealment of documents and videos from the agency would serve to prove the existence of a product defect, fraudulent concealment relating to the tolling of the statute of limitations, and willful misconduct to support a punitive damages award. At trial, the appellant essentially claimed that the Ford Bronco II had the propensity to rollover and that Ford knew of this defect before it placed the vehicle on the market. Appellant asserted that Ford attempted to and, in fact, did successfully cover up the defect during the 1988 NHTSA investigation. The appellant argued that the Weinstein letter proved that Ford had withheld information from NHTSA regarding the Bronco II's rollover propensity during its investigation.

In this appeal, the appellant asserts that the letter was admissible as a public document under Rule 803(8)(B) or 803(8)(C) of the West Virginia Rules of Evidence. The appellant argues that the admissibility of a public report, record, or document is assumed in the first instance. The burden then shifts to the party opposing the admission of the document to show that it is "sufficiently untrustworthy." *Citing Hess v. Arbogast*, 180 W.Va. 319, 376 S.E.2d 333 (1988). The appellant maintains that the letter is trustworthy and the authenticity of the document was not challenged.

Alternatively, the appellant argues that the document was admissible under Rules 803(6) or 803(24) of the West Virginia Rules of Evidence. The appellant asserts that she should have been able to use the letter during her cross-examination of Roger Maugh, a former Ford executive, who testified that NHTSA had investigated the Bronco II rollover problem; that Ford had submitted all documentation requested by NHTSA; and that NHTSA had closed the investigation finding no defect in the Bronco II. The appellant asserts that because she was not permitted to use the letter during her cross-examination of Mr. Maugh, the jury was misled into believing the evidence tended to show that Ford had complied with NHTSA's requests during the prior investigation and that the agency had found no defect.

In response, Ford contends that the circuit court did not abuse its discretion by excluding the Weinstein letter. Ford asserts that the letter was not admissible as a public "report" under Rule 803(8) because it does not satisfy any of the three specific requirements under the rule for admissibility. Ford also maintains that the letter was not admissible under Rule 803(6) or 803(24).

■ After reviewing the record, we find that the letter was not admissible pursuant to Rule 803(8), or any other hearsay rule

exception. The appellant assumes that the Weinstein letter qualifies as a "public report" under Rule 803(8) and relies upon the presumption set forth in *Hess, supra.* In Syllabus Point 4 of *Hess*, we stated that "Under *W.Va.R. Evid.* 803(8)(C), the contents of a public report, record or document are an exception to the hearsay rule and are assumed to be trustworthy, unless the opponent of the report establishes that the report is sufficiently untrustworthy." Clearly, before the cited presumption can be invoked, the evidence must qualify as a "public report" pursuant to Rule 803(8). Rule 803(8) provides that the following documents are not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The letter in question clearly does not satisfy any of the criteria of Rule 803(8)(B) or 803(8)(C). It merely repeats the allegations of trial counsel and outlines the inquiries of NHTSA during the prior investigation. Obviously, the letter does not involve matters observed by the agency pursuant to a duty imposed by law as required by Rule 803(8)(B). Typically, this exception involves accident reports or systematic official governmental records such as written weather reports. *See* 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, 235 (3d ed.1994).

■ In addition, the letter does not contain "factual findings resulting from an investigation made pursuant to authority granted by law" as discussed in Rule 803(8)(C). Generally, "interim agency reports and preliminary memoranda do not satisfy Rule

803(8)(C) requirements." *Smith v. Isuzu Motors Limited,* 137 F.3d 859, 862 (5th Cir. 1998) (holding that three memoranda prepared by staff members of NHTSA relating to a petition requesting the agency to establish stability standards for certain types of passenger vehicles did not satisfy Fed. R. Evid, 803(8)).[3] *See also Toole v. McClintock,* 999 F.2d 1430 (11th Cir.1993) (holding that a document prepared by the Food and Drug Administration which contained only proposed findings was not admissible pursuant to Fed.R.Evid. 803(8)(C)); *Koonce v. Quaker Safety Products & Mfg. Co.,* 798 F.2d 700, 720 (5th Cir.1986) (holding that a memo outlining future inquiries into safety measures and offering opinions on expected results was not admissible under Fed.R.Evid. 803(8)(C)). In this case, the letter in question merely apprises Ford of attorney Heiskell's allegations and requests that certain documents be provided to the agency. The letter simply contains no findings of fact warranting its admissibility pursuant to Rule 803(8)(C). Likewise, the letter does not satisfy any of the requirements for admissibility pursuant to Rule 803(6) or Rule 803(24).

■ As discussed above, when the Weinstein letter was offered as a trial exhibit, it was hearsay and could not be admitted under any of the above enumerated exceptions to the hearsay rule. Accordingly, it was properly excluded by the trial court as hearsay. However, trial counsel then very resourcefully attempted to use the Weinstein letter for impeachment purposes, which the trial court also refused to permit. Unfortunately, when the letter was sought to be used for impeachment purposes, it was no longer hearsay. Pursuant to Rule 801(d) of the West Virginia Rules of Evidence, the letter is not hearsay inasmuch as it was not then offered to prove the truth of the matter asserted therein, but was offered only for impeachment purposes.

Consequently, we believe that the appellant was denied the opportunity to conduct a fair cross-examination of Mr. Maugh, a former Ford executive. During Ford's case-in-chief, Mr. Maugh was permitted to testify, over the appellant's objection, that NHTSA

---

**3.** Fed.R.Evid. 803(8)(C) and W.Va. R. Evid. 803(8)(C) are virtually identical.

had investigated the Bronco II rollover problem; that Ford had submitted all the documentation requested by the agency during its investigation; and that NHTSA had closed the investigation finding no defect. Contrary to Mr. Maugh's testimony, the Weinstein letter demonstrates that Ford did not provide NHTSA with certain documents it requested during its prior investigation. Clearly, the appellant should have had the opportunity to confront Mr. Maugh with the Weinstein letter.

The scope of cross-examination of a witness includes not only the subject matter of direct examination, but also the credibility of the witness. Rule 607 of the West Virginia Rules of Evidence provides: "The credibility of a witness may be attacked and impeached by any party[.]" Impeachment evidence is not to be considered by the trier of fact to determine the ultimate issue because it is not offered to prove the truth of the matter asserted. Instead, impeachment evidence is to be considered by the trier of fact for the limited purpose of assessing a particular witnesses' credibility. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, 665 (3d ed.1994).

Upon review of the record, it is apparent that the appellant wanted to use the Weinstein letter to impeach Mr. Maugh and therefore, sought to have it admitted in evidence. The appellant conceded the letter was hearsay, but argued that it was admissible pursuant to the public records exception to the hearsay rule. As discussed above, we do not believe that the letter was admissible as a trial exhibit on hearsay grounds. However, we do believe that trial counsel should have been permitted to use the Weinstein letter for the purpose of impeaching the testimony of Mr. Maugh. The letter was factually inconsistent with Mr. Maugh's testimony, and therefore, the jury should have been permitted to hear the factual contradictions indicated in the letter for the purpose of assessing his credibility. Accordingly, we find that the circuit court abused its discretion by not permitting the appellant to use the Weinstein letter during the cross-examination of Mr. Maugh for impeachment purposes.

For the reasons set forth above, the final order of the Circuit Court of Preston County is reversed, and this case is remanded for a new trial.

Reversed and remanded.

Justice McGRAW did not participate in the decision of this case.