469 S.E.2d 99

**Marilyn MILHOAN, Petitioner
Below, Appellant**

v.

**Naomi Evelyn KOENIG, Executrix of the
Last Will and Testament of Robert F.
Milhoan, Respondent Below, Appellee.**

**No. 22893.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 9, 1996.

Decided March 1, 1996.

**164**

Leonard Z. Alpert, Alpert, D'Anniballe & Visnic, Weirton, and Joseph L. Ludovici, Aronson, Fineman & Davis, East Liverpool, Ohio, for Appellant.

John J. Anetakis, Frankovitch & Anetakis, Weirton, for Appellee.

PER CURIAM:

Marilyn Milhoan, the daughter of the decedent, Robert F. Milhoan, appeals the circuit court's decision finding that her father's will dated October 5, 1988 was valid. The circuit court affirmed the decision of the County Commission of Hancock County finding the decedent was mentally competent, understood the nature and consequences of, and was not unduly influenced in making his October 5, 1988 will. On appeal, Ms. Milhoan argues that the circuit court and the county commission erred in those findings. Based on our review of the record, we find that the circuit court was not clearly erroneous in affirming the factual findings of the county commission, and therefore, we affirm the decision of the circuit court.

I.

FACTUAL BACKGROUND

Ms. Milhoan is the only child of Robert Milhoan, the decedent, and Naomi Evelyn Koenig, the executrix under the October 5, 1988 will, is the decedent's sister. In September 1987, the decedent developed health problems that were diagnosed as lung cancer, which later metastasized to the brain. In February or March 1988, Ms. Milhoan, with her child and boyfriend, moved into the decedent's house to help care for him. Although Ms. Milhoan and her boyfriend continued with outside-the-house employment, Ms. Milhoan provided care for her father. Ms. Koenig cared for her brother when Ms. Milhoan was working.

In September 1988, a disagreement arose between Ms. Koenig and Ms. Milhoan's boyfriend over parking near the decedent's house. As a result, Ms. Koenig drafted and Mr. Milhoan signed an eviction letter, to remove Ms. Milhoan, her child and boyfriend from the decedent's house. On September 27, 1988, Ms. Koenig called John J. Anetakis, Esquire, to have changes made in her brother's will, which heretofore had bequeathed all of Mr. Milhoan's property, real and personal, to Ms. Milhoan. After a private conversation on September 27, 1988, between Mr. Milhoan and James Connolly, an associate of Mr. Anetakis, on September 28, 1988, Mr. Connolly returned to Mr. Milhoan's house where Mr. Milhoan signed a will devising Mr. Milhoan's house to Ms. Milhoan and bequeathing the residue to Ms. Koenig. On September 28, 1988, Mr. Milhoan also signed a general power of attorney appointing Ms. Koenig.

On October 2, 1988 when Ms. Milhoan was moving out of the house, another disagreement arose concerning a medicine cabinet and a box containing receipts. Thereafter, Ms. Koenig again called Mr. Anetakis' office. This time she told Mr. Anetakis to prepare a new will for Mr. Milhoan leaving all of his property to her, Ms. Koenig. Because of Mr. Milhoan's illness, he was hospitalized and Mr. Anetakis and two attorneys from his firm took the revised will to Mr. Milhoan in the hospital. Carl Frankovitch, Sr., one of the witnesses, testified that Mr. Milhoan indicat-

ed that his estate was "[t]o go to his sister." Mark Colantonio, the other witness, testified that he read Mr. Milhoan's will to him, and that Mr. Milhoan nodded affirmatively when asked if he wanted to sign the will. The October 5, 1988 will was signed with an "X." A friend of Mr. Milhoan, John Hart, was also present and testified that Mr. Milhoan indicated that he wanted his property to go to his sister and not his daughter.

The decedent's treating physician, Cherian John, M.D., testified that although the decedent was receiving medication and was depressed during the decedent's last hospitalization, Mr. Milhoan's mental status was normal and that he had no extraordinary memory problems. Dr. John said that the decedent "could" have been influenced, but that he had no personal knowledge of such influence and could not state to any degree of medical certainty that Mr. Milhoan was influenced. Mr. Milhoan died on October 17, 1988. Ms. Milhoan did not visit her father during his last hospitalization.

Before Mr. Milhoan's death, Ms. Koenig used her power of attorney to cash United States Saving Bonds in the amount of $34,-536.16, to change the beneficiary designation on two life insurance policies in the amounts of $5,000 and $1,110.03 from Ms. Milhoan to herself, and to cash a $14,059.16 Individual Retirement Account (IRA account). Ms. Milhoan contends that she had been originally named on some of the United States Savings Bonds and as the beneficiary of the life insurance policies and the IRA account.

At the time of Mr. Milhoan's death, he owned the house where he lived, two Certificates of Deposit of unknown amounts, a checking account with an alleged balance of $13,000 (Ms. Koenig believes it to be substantially lower) and an IRA of about $10,500.

After Mr. Milhoan's death, Ms. Milhoan filed a Notice of Contest with the County Commission of Hancock County. After considering the evidence presented at two hearings, the county commission denied Ms. Milhoan's petition and sustained the October 5, 1988 will. Ms. Milhoan petitioned the circuit court, which based on the record made before the county commission, affirmed the decision of the county commission. Finally,

Ms. Milhoan appealed to this Court requesting that (1) both the September 28, 1988 and October 5, 1988 wills be set aside in favor of an earlier will bequeathing everything to Ms. Milhoan and (2) that the September 28, 1988 power of attorney be set aside and all assets converted thereunder be returned to the decedent's estate.

## II.

### DISCUSSION

In reviewing challenges to factual findings made by a county commission in an action contesting a will that were also adopted by the circuit court, we review the underlying factual findings under a clearly erroneous standard. Recently we discussed the standard of review applied to findings made by a family law master that were adopted by the circuit court. In Syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), we stated:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

We apply a similar standard of review to the findings and conclusions of a circuit court. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. See syl. pt. 1, *Burnside v. Burnside*, No. 22399, [194] W.Va. [263], 460 S.E.2d 264 (Mar. 24, 1995)." *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." *Phillips v. Fox,* 193 W.Va. at 661, 458 S.E.2d at 331, *quoting, United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

On appeal, Ms. Milhoan argues that her father, in the later stages of his illness, lacked the mental capacity to make a will and was unduly influenced in both his September 28, 1988 and October 5, 1988 wills.

■ Traditionally we have placed the burden of proof on the party advocating the validity of a will to prove the mental capacity of the testator. Syl. pt. 7, *Montgomery v. Montgomery,* 147 W.Va. 449, 128 S.E.2d 480 (1962) states: "Upon the trial of a case to impeach a will, the burden of proving capacity of the testator at the time of execution of the will is upon the proponent of a will." *See Hess v. Arbogast,* 180 W.Va. 319, 323, 376 S.E.2d 333, 337 (1988). We give special consideration to the testimony of witnesses present at the execution of a will. Syl. pt. 2 of *Stewart v. Lyons,* 54 W.Va. 665, 47 S.E. 442 (1904) states:

> Evidence of witnesses present at the execution of a Will is entitled to peculiar weight, and especially is this the case with the attesting witnesses.

*See Papenhaus v. Combs,* 170 W.Va. 211, 217, 292 S.E.2d 621, 627 (1982).

■ In the case *sub judice,* Ms. Koenig presented testimony from three witnesses who were present at the execution of Mr. Milhoan's October 5, 1988 will. Both attesting witnesses said that although Mr. Milhoan was obviously physically ill, he was mentally competent to understand the nature and extent of his will. Mr. Frankovitch said that although Mr. Milhoan was in pain, he answered questions about who was to inherit his property. Mr. Colantonio said that after he read various sections of the will, he looked Mr. Milhoan in the eye and it was clear to him that Mr. Milhoan understood that under the will, his sister, and not his daughter, would inherit all his property. The other witness, Mr. Hart, testified that Mr. Milhoan understood that his property would go to his sister. In Syl. pt. 3, *Stewart v. Lyons,* we said:

> It is not necessary that a testator possess high quality or strength of mind, to make a valid will, nor that he then have as strong mind as he formerly had. The mind may be debilitated, the memory enfeebled, the understanding weak, the character may be peculiar and eccentric, and he may even want capacity to transact many of the business affairs of life; still it is sufficient if he understands the nature of the business in which he is engaged and when making a will, has a recollection of the property he means to dispose of, the object or objects of his bounty, and how he wishes to dispose of his property.

■ Although Dr. John, Mr. Milhoan's treating physician, testified that the decedent's disease and medication "could" affect his mental competency, he was unable to testify that Mr. Milhoan's mental competency had been affected. Mere speculation, without any additional evidence of a lack of mental competency, is insufficient to overcome the testimony of three witness. Although Ms. Milhoan argues that her father's inability to read the will and to affix his normal signature to the will shows a lack of mental competency, the testimony, when considered as a whole, shows that these circumstances were caused by Mr. Milhoan's physical illness and do not demonstrate a lack of mental capacity or a lack of understanding of the effect of his October 5, 1988 will. *See McMechen v. McMechen,* 17 W.Va. 683, 707–8 (1881) ("If one having testamentary capacity, is unable from any physical cause to write his name to his will, another person may steady his hand and aid him in so doing"); *Montgomery v. Montgomery,* 147 W.Va. at 455, 128 S.E.2d at 484 ("the mental capacity of [the testator] ... at the time of the execution of the will is the controlling factor in this case, as well as any other case dealing with the testamentary capacity to make or execute a valid will"). Although the physical infirmities of a testator during and after the making of a will can be considered by a jury on the question of mental capacity, proof of such infirmities "alone is not sufficient to establish the lack of mental capacity of a

testator to make a will. [Citations omitted.]". *Montgomery v. Montgomery*, 147 W.Va. at 456, 128 S.E.2d at 485.

Based on the evidence presented before the county commission, we find that the commission was not clearly erroneous in concluding that the decedent had sufficient mental competency on October 5, 1988 to understand the will he signed.

█ Ms. Milhoan also alleges that the October 5, 1988 will is invalid because of undue influence by Ms. Koenig. "Undue influence, to avoid a will, must be such as overcomes the free agency of the testator at the time of actual execution of the will." Syl. pt. 5, *Stewart v. Lyons, supra.* A party seeking to impeach a will because of undue influence has the burden of proof, which must be more than mere suspicion, conjecture and possibility. In Syl. pt. 5, *Frye v. Norton,* 148 W.Va. 500, 135 S.E.2d 603 (1964), we stated:

In an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercise is not sufficient to support a verdict which impeaches the will upon that ground.

*See* Syl. pt. 2, *Cale v. Napier,* 186 W.Va. 244, 412 S.E.2d 242 (1991); Syl. pt. 7, *Floyd v. Floyd,* 148 W.Va. 183, 133 S.E.2d 726 (1963).

█ Undue influence is generally shown by circumstantial evidence including advanced age, physical or mental infirmities, and a contrary disposition in prior wills Syl. pts. 4 and 5 of *Cale v. Napier, supra,* state, respectively:

Advanced age or physical or mental infirmities of the testator can be shown to establish that undue influence was exerted.

In a will contest on a charge of undue influence, evidence is admissible to show that the testator had previously either expressed an intention to make a contrary disposition of the property or had a prior will which made a disposition contrary to that of the contested will.

*See Newell v. High Lawn Memorial Park,* 164 W.Va. 511, 264 S.E.2d 454 (1980).

█ Ms. Milhoan argues that all the *Cale v. Napier* factors are present in this case and it "cannot be contend[ed] that the decedent's love for his daughter changed so drastically within less than a week ... [that] he decided to disinherit his only child." In addition to the decedent's infirmities, which we discussed with regard to his mental capacity, we note that prior to the September 28, 1988 and October 5, 1988 wills, the decedent left his property to his wife with the remainder to his daughter, Ms. Milhoan, if his wife predeceased him.

However, the record shows that several disputes arose within the family shortly before the decedent changed his will, both the first and second time. Ms. Koenig contends that these disputes, along with the disharmony they represent, caused the decedent to change his will. We also note that Delbina Stanley, a witness for Ms. Milhoan who had cared for the decedent, testified that Ms. Koenig offered to use her money, if necessary, to care for the decedent. Thus Ms. Milhoan presents us with a factual question concerning whether the decedent was unduly influenced to change his will or was influenced by the disharmony.

Given that Ms. Milhoan has the burden of proving undue influence by something more that mere suspicion, conjecture or possibility, we find that the county commission and the circuit court's rejection of this argument is not clearly erroneous. We note that the county commission heard the testimony in this matter and determined that the decedent's October 5, 1988 will was not unduly influenced, and we decline to reverse that determination based on mere suspicion.[1]

Finally, we note:

leging fraud was also filed. Because we have determined that the circuit court did not err in finding that Mr. Milhoan's October 5, 1988 will was valid, we also reject the requested relief from actions taken by Ms. Koenig under the power of attorney. Several of the acts alleged to have been done under the power of attorney

---

1. Although Ms. Milhoan requests that we set aside all the acts done under the power of attorney given to Ms. Koenig on September 28, 1988 by Mr. Milhoan, Ms. Milhoan provides no argument independent of her challenges to the October 5, 1988 will for such relief. According to Ms. Milhoan's petition "a separate legal action" al-

" 'Where legal capacity is shown, and the testator acts freely, the validity of the will can not be impeached, however unreasonable, imprudent, or unaccountable it may seem to the jury or to others'. Point 3, Syllabus, *Nicholas v. Kershner,* 20 W.Va. 251. Point 12, Syllabus, *Ritz v. Kingdon,* 139 W.Va. 189 (79 S.E.2d 123)" (1953), *overruled on other grounds, State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955) ].

Syl. pt. 7, *Frye v. Norton, supra.*

For the above stated reasons, the decision of the Circuit Court of Hancock County is affirmed.

Affirmed.

applied to property, the distribution of which is outside the will. However, these matters were not presented below, and we decline to address them on this appeal. *See Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey,* 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark,* 179 W.Va. 482, 370 S.E.2d 138 (1988).