# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Judy Mae Greer, et. al.,**
**Petitioners Below, Petitioner**

**FILED**

**February 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-1228** (Pocahontas County 15-C-07)

**David Lynn Vandevender and Donna Lee Vandevender,**
**Respondents Below, Respondents**


## MEMORANDUM DECISION

Petitioners Judy Mae Greer, William Charles Vandevender, Judith Kay Newbrough, Daniel T. Vandevender, Dallas E. Vandevender, Jo Ann Rae Giraldi, and Douglas P. Vandevender, by counsel John J. Wallace, IV, appeal the order of the Circuit Court of Pocahontas County that dismissed their claims of tortious interference, undue influence, fraud, and civil conspiracy. Respondents David Lynn and Donna Vandevender, by counsel Jefferson I. Tripplett and Charles R. Tripplett, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This action involves the estate of Mary C. Vandevender ("the decedent"). The decedent's estate mainly consists of an approximately 200-acre family farm ("the farm") located in Pocahontas County, West Virginia. Petitioners and Respondent David Lee Vandevender are the decedent's children. In 1994, respondents entered into a lease agreement for the farm with the decedent and her husband, William Mack Vandevender. Pursuant to the lease, respondents farmed the land and generated income to maintain the property. Following the death of her husband, the decedent became the sole owner of the family farm in fee simple. On April 27, 2006, the decedent executed a will which divided her estate, including the family farm, equally among her children.

In 2012, the decedent appeared to forget about her will, and requested her son, Petitioner William Vandevender, to take her to get a will prepared. Petitioner William Vandevender informed her that she already had a will prepared, to which she replied, "I did?" The decedent did not ask Petitioner William Vandevender to prepare a will again. In October of 2012, Respondent David Vandevender drafted a hand-written copy of a new will for the decedent. The newly drafted will changed the disposition of the family farm to Respondents David and Donna Vandevender. The new will also contained a provision that Respondents would pay to petitioners

1

$10,000 for their shares of the farm. Respondent David Vandevender met and reviewed the handwritten draft with Michael Doss, an attorney. The decedent was not present at this meeting.

On January 7, 2013, respondents took the decedent to Mr. Doss's office for the execution of the new will ("the 2013 will"). As decedent was unable to read at that time due to poor eyesight, Mr. Doss read the draft of the will and hand-written notes provided by respondents regarding the preparation of the will aloud to the decedent. Mr. Doss asserts that this took approximately twenty to thirty minutes. After reading the draft of the 2013 will, Mr. Doss left the room to make amendments, although the record is not clear as to what changes were made. Following this break, the decedent executed the will in the presence of two witnesses, respondents, Mr. Doss, and a notary. The decedent died on April 12, 2014.

On February 24, 2015, petitioners filed a petition to set aside the will and for other relief. The circuit court dismissed the petition finding that the petition was subject to the six-month statute of limitations contained in West Virginia Code § 41-5-11, because the controversy was a "will contest,"  and not a tort action, but permitted the parties to amend the complaint to allow petitioners to file additional claims.[1] In the amended complaint, petitioners asserted claims of undue influence, fraud, tortious interference, and civil conspiracy.

Petitioners claimed that the decedent's wish was for the farm to be split equally amongst her children. Petitioners claim that in 2000 their father approached the decedent regarding leaving the family farm to respondents in exchange for a payment of $7,000 to each petitioner. Petitioners assert that the decedent rejected this proposal. Petitioners assert that in 2005 Respondent David Vandevender approached the decedent with a hand-written instrument which would convey the farm to respondents in exchange for purchasing the petitioners' shares of the farm for $8,000 each. Petitioners contend that the decedent again rejected this offer, and subsequently executed her 2006 will which divided her estate equally among her children. Petitioners assert further that after the execution of the 2013 will, on Thanksgiving Day of that year, the decedent again rejected the idea that respondents should be left the farm, stating, "[Respondent David Vandevender's] trying to get me to sign the farm over to him." When asked if she believed that was fair, the decedent shook her head no.

Respondents filed an answer to petitioners' complaint. Respondents claim that, prior to his death, the parties' father intended for the farm to go to respondents, and that several of the petitioners were aware of this fact. Respondents assert further that since their father's death, respondents have performed all of the farming operations on the family farm. Respondents contend that "none of their siblings worked the farm with respondents, nor did any of them demonstrate any desire to be involved in operations, maintenance and upkeep of the family farm."

Following discovery, respondents filed a motion for summary judgment, arguing that there was no genuine issue of material fact regarding the petitioner's claims. Finding that petitioners had not presented sufficient evidence to show a genuine issue of fact regarding their

---

[1] The appendix record does not contain a copy of the original complaint for this Court's review.

claims of tortious interference, undue influence, fraud and civil conspiracy, the circuit court granted respondents motion for summary judgment, and dismissed petitioners' complaint. In its order, the circuit court held that there was no genuine issue of dispute in this matter. Importantly, the circuit court found that petitioners admitted that they lacked direct evidence that the decedent was incompetent at the time of the execution of the will, that her free agency had been overcome, that the will was obtained by coercion, or that she was unable to resist any coercion or influence. Specifically, the circuit court found that the decedent lived alone in her home until December of 2013, and prior to the execution of the will, into early 2014, the decedent managed her own affairs and signed her own checks. Petitioners now appeal the order of the Circuit Court of Pocahontas County that granted summary judgment to respondents. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Petitioners first argue that the circuit court erred in granting summary judgment, and that direct evidence is not required to prove a claim of undue influence. Petitioners assert that the matter of whether respondents exerted undue influence over the decedent is an issue for the jury to decide, and argue that the circuit court usurped the role of the jury in finding that the decedent "may have simply changed her mind." Petitioners rely upon syllabus point two of *Spaur v. Hayes*, 147 W. Va. 168, 126 S.E.2d 187 (1962), arguing that "[w]here there is no controversy concerning the actual facts, if different inferences may be drawn therefrom, submission to a jury is required." We disagree and find that petitioners failed to establish a genuine issue regarding the execution of the 2013 will.

To support their claim of undue influence, petitioners contend that the decedent repeatedly rejected the notion of leaving the farm to respondents, and assert that the decedent stated on more than one occasion that she was afraid of respondents years prior to the execution of the will. We have held that,

> "[i]n an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercise[d] is not sufficient to support a verdict which impeaches the will upon that ground." Syllabus Point 5, *Frye v. Norton,* 148 W.Va. 500, 135 S.E.2d 603 (1964).

Syl. Pt. 3, *Milhoan v. Koenig,* 196 W. Va. 163, 469 S.E.2d 99 (1996). Further, "'[u]ndue influence, to avoid a will, must be such as overcomes the free agency of the testator at the time of actual execution of the will.' Syllabus Point 5, *Stewart v. Lyons,* 54 W.Va. 665, 47 S.E. 442 (1903)." Syl. Pt. 10, *James v. Knotts*, 227 W. Va. 65, 705 S.E.2d 572 (2010). Here, petitioner fails to prove that respondents asserted undue influence over the decedent at the time of the execution of the will. At the time of the execution of the 2013 will, the decedent lived alone, signed her own checks, and conveyed property in a separate matter, despite her failing vision. In fact, the record reflects that the decedent asked Petitioner William Vandevender to take her to have a will prepared, and he declined.

In determining undue influence, "[t]he testimony of an attending physician or the lawyer who drafted the will is also entitled to great weight on the question of mental capacity." *Floyd v. Floyd*, 148 W. Va. 183, 196–97, 133 S.E.2d 726, 734 (1963). The record reflects that the

decedent's primary care physician examined the decedent twice in January of 2013, and reported that she was competent to manage her health and personal affairs. Mr. Doss, who prepared the will testified that he did not observe the decedent to be in fear, that decedent told him that she wanted the farm to go to respondents, and that she did not want her other children to know that she was making a new will, or what was in the will. Under these circumstances we find that the circuit court did not err in finding that summary judgment was appropriate.

Next, petitioner argues that the circuit court abused its discretion by excluding the affidavit of Petitioner Judy Greer. After the discovery deadline, petitioners attached Ms. Greer's affidavit to its March 21, 2016, response to respondents' motion for summary judgment. The affidavit stated that on the occasions the decedent told Ms. Greer that she was afraid of Respondent David Vandevender. Petitioner claims that the circuit court should have considered the following factors in excluding the affidavit:

> (1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of that party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded." Syl. Pt. 5, *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983).

Syl. Pt. 4, in part, *First Nat. Bank in Marlinton v. Blackhurst*, 176 W. Va. 472, 345 S.E.2d 567 (1986). In response, respondents argue that petitioners failed to object to the exclusion of the evidence, and, in fact, asserted on the record that they did not need Ms. Greer's testimony in order to prove their claim. Upon our review of the record we find that petitioners failed to preserve this issue for appeal, as they did not object to the ruling on the record. Petitioners assert that pursuant to Rule 46 of the West Virginia Rules of Civil Procedure, they were not required to object, as the circuit court noted all objections and exceptions in its final order. However petitioners misread the rule, and "it is still necessary for objections to be made." *Konchesky v. S.J. Groves & Sons Co.*, 148 W. Va. 411, 415, 135 S.E.2d 299, 303 (1964). Pursuant to Rule 46, of the West Virginia Rules of Civil Procedure,

> [f]ormal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary **it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor**; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.

(Emphasis added.)

Here, petitioners did not object to the exclusion of the affidavit, and in fact, asserted that the evidence was not necessary in order to prove their claims. This Court has made clear that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. W. Va. Dep't of Commerce, Div. of Parks & Recreation*, 197 W. Va. 318, 475 S.E.2d 410 (1996). Further, "[w]here objections were not shown to have been made in the trial court, and the matters

4

concerned were not jurisdictional in character, such objections will not be considered on appeal." Syl. Pt. 2, *id.* (internal citations omitted). As a result we find that petitioners did not preserve this issue for appeal and decline to consider this assignment of error.

Finally, petitioners argue that the circuit court erred in finding that the six-month statute of limitations contained in West Virginia Code § 41-5-11 applies in this case, and dismissing petitioners' original complaint. Petitioners assert that the will contained a contingency, that respondents were to pay $10,000 to each of the petitioners in order to receive the deed to the farm, and that the contingency was not met until after the six-month period tolled. Respondents disagree and assert that the language of the statute is unambiguous, and that petitioners did not file their will contest in a timely fashion. Pursuant to West Virginia Code § 41-5-11,

> [a]fter a judgment or order entered as aforesaid in a proceeding for probate ex parte, any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by complaint to impeach or establish the will, on which complaint, if required by any party, a trial by jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. If the judgment or order was entered by the circuit court on appeal from the county commission, such complaint shall be filed within six months from the date thereof, and if the judgment or order was entered by the county commission and there was no appeal therefrom, such complaint shall be filed within six months from the date of such order of the county commission. If no such complaint be filed within the time prescribed, the judgment or order shall be forever binding. Any complaint filed under this section shall be in the circuit court of the county wherein probate of the will was allowed or denied.

The circuit court found that petitioners' original complaint was a will contest as outlined in West Virginia Code § 41-5-11, and as such, should have been filed within six months of the admission of the 2013 will to probate. We agree with the circuit court. Petitioners provide no legal authority in support of their position that a contingency tolls the statute of limitations in a will contest. "'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syl. Pt. 5, *Leggett v. EQT Prod. Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017). Here, the language of the statute unambiguously states that one who seeks to impeach a will must file a complaint within six months after the will was admitted to probate. Petitioners did not file their complaint within this time period. As a result, we find no error and decline to reverse the circuit court on this claim.

For the foregoing reasons, we affirm.

Affirmed.

5

**ISSUED:**  February 9, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6