## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kathy McCullough,**
**Defendant Below, Petitioner**

**vs)  No. 17-1084** (Wood County 16-C-117)

**Steve McCullough, individually and as**
**Executor of the estate of Creighton McCullough,**
**Gary McCullough, and Kathy Sloan,**
**Plaintiffs Below, Respondents**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kathy McCullough, by counsel W.B. Richardson Jr., appeals the December 15, 2017, Final Judgment Entry and Order of the Circuit Court of Wood County that found that her deceased husband named her as the beneficiary on his IRA due to undue influence. Respondents Steve McCullough, individually and as executor of the estate of Creighton McCullough; Gary McCullough, and Cathy Sloan, by counsel Ethan Vessels, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

At issue in this appeal is that on June 9, 2015, Joseph Creighton McCullough ("The decedent") changed the beneficiary designation on his IRA from Respondents Steve McCullough, Gary McCullough, and Cathy Sloan, his children, to Petitioner Kathy McCullough. Petitioner married the decedent on June 1, 2015. At the time of the marriage, the decedent was in his mid-seventies, and petitioner was sixty-two years old, and no children were born of the marriage. According to respondents, petitioner met or re-entered the decedent's life a few months before the parties married. According to petitioner, she and the decedent were engaged in an "on-again off-again" relationship for fifteen years prior to the decedent's death. The marriage was a surprise to the respondents.

In 2013, the decedent began complaining of losing his memory. According to Dr. Newland, the decedent's doctor, over the next two years and up to his death, the decedent's memory problems worsened and his health declined. In November of 2014, Dr. Newland began to prescribe medication for the decedent for the treatment of Alzheimer's disease. In March of 2015, Dr. Newland increased the decedent's medication and later formally diagnosed the

decedent with dementia.

After petitioner and the decedent started dating in early 2015, she attended a May of 2015 doctor appointment with the decedent. At that visit, petitioner requested a "competency statement" regarding the decedent's health. According to Dr. Newland, at that visit the decedent was oriented to time and place, well-hydrated, and well-nourished. Dr. Newland saw the decedent again later that month, and the decedent did not mention that he planned to get married. Dr. Newland noticed that the decedent's dementia was worse at that visit, and that he was fatigued and losing weight.

On June 7, 2015, Respondent Steve McCullough called the West Virginia elder abuse hotline and reported that he believed his father was being financially exploited by petitioner. An adult social worker, China Page, visited the home on June 17, 2015. Ms. Page interviewed the decedent outside of petitioner's presence, and informed him of the referral. The decedent denied the allegations, and stated that he was happy with his wife and explained that he and petitioner dated for many years, on and off, prior to their wedding. Ms. Page did not see any indication on that visit that the decedent was incompetent or incapacitated.

On June 15, 2015, after petitioner and the decedent were married, they again visited Dr. Newland, and petitioner again requested a competency statement. At that time, Dr. Newland did not believe that the decedent was competent, and believed that the decedent's free will was being suppressed by petitioner. As a result, he made notes regarding the petitioner's statements and demeanor, remarking, "[t]here's a question that the patient is competent to make his own decisions; and I do not think that he is competent to make his own decisions, especially financial decisions."

The decedent died on January 31, 2016. His cause of death was deemed "end stage Lewy Body dementia." In March of 2016, two months after the decedent's death, respondents filed suit against petitioner seeking to void the June of 2015, change of beneficiary designation due to (1) lack of mental competence, and (2) undue influence. Respondents also sought and obtained a preliminary injunction that froze the IRA until the resolution of the matter.

On November 1, 2017, following discovery, a jury trial was held in the Circuit Court of Wood County. Respondents presented the testimony of Dr. Newland, who testified to the facts above, and Diane Stutler, a neighbor of the decedent, who testified to the decedent's poor physical condition during the relevant time period, that the decedent was thrifty and suddenly started spending when he started dating petitioner, and that she was suspicious of the marriage, because petitioner spoke often of the decedent's money. Respondents also presented the testimony of Dr. Joseph Kennell, a licensed psychologist who conducted a competency evaluation of the decedent in November of 2015. According to Dr. Kennell, the decedent failed every test performed, and Dr. Kennell concluded that the decedent was suffering from "a severe neurocognitive disorder." Dr. Kennel also found that the decedent could not explain how he met his new wife, how long they had known each other, the development of the relationship, or how they decided to marry.

Respondents Gary and Steve McCullough each testified regarding the decline in their

father's health and that they were shocked that the decedent married petitioner, given the fact that in the last year of his life he was unable to put together a full sentence due to his illness. Respondents also called petitioner as an adverse witness, who testified that she had been married four times before she married respondent and that since 2000, she and the decedent dated intermittently.

Petitioner testified that when she and the decedent's relationship "got serious" in the spring of 2015 she did not know he was taking medication for dementia, but she "could tell there was something off". She ultimately admitted that Dr. Newland told her at one of the decedent's appointments that the decedent had "signs of dementia". Petitioner also admitted that on two occasions she asked Dr. Newland to make a finding that the decedent was competent, and that when she married the decedent she was aware of his IRA. Petitioner also testified that she married the decedent at a friend's house and did not inform her family or the decedent's family that they were marrying. Finally, petitioner admitted that after the change in beneficiary and the establishment of the joint banking account, she began to spend funds from the IRA. Petitioner and the decedent purchased a new car for her, a $5,000 diamond ring, and by the end of 2015, $68,000 had been withdrawn from the IRA.

Petitioner presented the testimony of numerous witnesses. Petitioner presented the testimony of attorney Joseph Santer who testified to preparing and revising wills for the decedent in 2013, and April of 2015. Bill Morgan, a car salesman, testified that he had no indication that the decedent was not in his right mind when he and the petitioner purchased the new vehicle in 2015. Four witnesses, Denise Shook, clerk, Christy Hinton, notary, Connie Lock, friend, and Michael Lambert, friend, testified that the decedent did not seem impaired in their presence. Other witnesses testified that petitioner and the decedent were genuinely affectionate with one another. Thomas Bailey, a financial advisor, testified that he visited the decedent in June of 2015 and that the decedent requested to change the beneficiary on his IRA to petitioner. Mr. Bailey testified that on that date, decedent was upset with his children for taking away his checkbook and giving him an allowance. Because the decedent was angry, Mr. Bailey suggested that the decedent take a day to think it over. Mr. Bailey returned the next day, and the decedent again expressed his desire to change the beneficiary. Mr. Bailey explained that he had no reason to question the decedent's mental faculties, and subsequently made the requested change.

Following the close of evidence, the trial court submitted two jury interrogatories. The jury was asked, "Do you find by a preponderance of the evidence that Creighton Joe McCullough, decedent, was NOT competent to execute the change of beneficiary of his individual retirement account dated June 9, 2015?" The jury marked, "No." The second interrogatory asked, "Do you find by a preponderance of the evidence that Creighton Joe McCullough, decedent, executed the change of beneficiary of his individual retirement account dated June 9, 2015, as a result of undue influence?" The jury marked "Yes." As a result, the trial court ordered that the investment account "is hereby vested in the beneficiaries previously-listed on this account[;]" and petitioner is divested of all right, title and interest to the funds held in the IRA account. The circuit court also ordered the fund to be liquidated and the proceeds forwarded to respondents' counsel. Following the jury verdict, petitioner filed a timely motion for judgment notwithstanding the verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure. The circuit court denied that motion and entered the final judgment order on December 15, 2017.

3

Petitioner now appeals the judgment order and the denial of her motion for judgment as a matter of law.

Petitioner asserts one assignment of error on appeal. Petitioner complains that the circuit court erred in failing to find that the jury's verdict of undue influence was against the "plain preponderance" of the evidence and refusing to grant judgment notwithstanding the verdict in petitioner's favor.

When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

Syl. Pt. 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). Further,

"[i]n determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983).

*Syl. Pt. 3, Fredeking.*

Petitioner argues that the verdict finding undue influence is not supported by the evidence. In support of her argument, petitioner recounts the testimony of Thomas Bailey, who testified that he discussed the beneficiary designation two days before the decedent changed the beneficiary, and that the decedent was emphatic that he wanted to make the change because he was upset with his children. Petitioner also recounts the testimony of China Page, who testified that she investigated the decedent and petitioner in response to a referral for "alleged exploitation." Ms. Page testified that at the time of her investigation, in June of 2015, the decedent was lucid, receiving good care, and not being abused or ill-treated. Relying upon this testimony, petitioner asserts that the circuit court erred in upholding the jury's verdict.

We disagree. "'Undue influence, to avoid a will, must be such as overcomes the free agency of the testator at the time of actual execution of the will.' Syl. pt. 5, *Stewart v. Lyons, supra." Milhoan v. Koenig*, 196 W. Va. 163, 167, 469 S.E.2d 99, 103 (1996). We have held that, "the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercised is not sufficient to support a verdict which impeaches the will upon that ground." Syl. Pt. 5, in part, *Frye v. Norton*, 148 W. Va. 500, 135 S.E.2d 603 (1964).

Dr. Newland testified that the decedent began to suffer from dementia in 2015, that the decedent was often confused and disoriented, and that he believed that petitioner was making decisions for the decedent. Further, the evidence revealed that petitioner was aware of the decedent's mental condition, and that the decedent had a sizeable IRA before the marriage. The evidence at trial further revealed that petitioner and the decedent married in secret, and that despite Dr. Newland's admonishments to petitioner regarding the decedent's mental health, petitioner repeatedly asked him to make a finding that the decedent was competent. Finally, the evidence shows that the decedent changed the IRA beneficiary designation within one week of the parties' wedding; and that after they were married, petitioner immediately began to spend funds from the IRA, withdrawing $68,000 from the account by the end of 2015.

We have held that "[u]ndue influence is generally shown by circumstantial evidence including advanced age, physical or mental infirmities, and a contrary disposition in prior wills." *Koenig*, 196 W.Va. at 167, 469 S.E.2d at 103. Here, considered in the light most favorable to respondents, there is sufficient circumstantial evidence to support the jury's verdict that the decedent changed the beneficiary in his IRA due to undue influence. Consequently, we find no error.

For the foregoing reasons, we affirm.[1]

Affirmed.

**ISSUED:**  November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

---

[1] Respondents assert a cross-assignment of error, alleging that the circuit court erred in refusing to give a portion of a jury instruction submitted by respondent. We deem this assignment of error moot in light of the affirmation of the jury verdict, and decline to consider this assignment of error.

5